PALADAC

v.

CITY OF ROCKLAND.

Supreme Judicial Court of Maine.

Argued March 8, 1989.
Decided May 2, 1989.

Charles C. Soltan, Michael Healy (orally), and Verrill & Dana, Augusta, for plaintiff.

Michael D. Seitzinger, Andrea C. Najarian (orally), and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

This case involves the interpretation of a Rockland Zoning Ordinance. The questions are whether a property owner who has filed an application for subdivision approval is prohibited from doing anything with respect to that property until approval is granted or the application withdrawn; whether code enforcement authorities can refuse to consider evidence of compliance that is submitted after a building permit has been denied; and whether a zoning requirement that all manufactured housing be set back at least 300 feet from any dwelling over one and one-half stories high is contrary to the Maine statute prohibiting discrimination against manufactured housing, 30 M.R.S.A. § 4965(2) (Pamph.1988).

Three separate lawsuits in the District and Superior Courts lie behind this appeal and they contain an intricate procedural history. We summarize only the facts important to the appeal.

Paladac[1] filed an application for subdivision approval on January 14 and 29, 1987, for property located in Rockland. Before any approval or denial occurred, Paladac filed with the Code Enforcement Officer an

---

1. The parties have used this name to refer collectively to all those with a legal or equitable interest in the land and have used the name Rockland to refer collectively to the municipal authorities. We do the same.

application for a permit to place a manufactured housing unit on the property. Paladac proceeded to place the unit there before receiving a permit. The Code Enforcement Officer denied the permit because of Paladac's failure to submit proof that the unit met the requirements of Maine's Manufactured Housing Act, 10 M.R.S.A. §§ 9001–9100 (1980 & Supp.1988), and regulations. He ordered that the unit be removed from the property for that reason and because it was placed on land in a proposed but not yet approved subdivision. Paladac then asked the Code Enforcement Officer to look under the unit's kitchen sink to observe a certification affixed there which, according to Paladac, demonstrated compliance with the statute and regulations. The Code Enforcement Officer declined to do so. Paladac then submitted a letter from the unit's manufacturer purporting to show compliance. The permit still did not issue. Later, the Code Enforcement Officer justified denial of the permit on the additional ground that a 300 foot setback requirement for manufactured housing had not been observed.

In a succession of appeals the Zoning Board of Appeals upheld the Code Enforcement Officer's denial of a permit because of the pending subdivision application, the failure to submit proof of compliance with the manufactured housing statute and violation of the 300 foot setback requirement.

Paladac filed suit in Superior Court, attacking the denial of the permit, and Rockland brought a civil action in District Court to recover fines for violation of the ordinance and for injunctive relief. The District Court case was removed to the Superior Court and the cases were in part consolidated and in any event heard simultaneously. The Superior Court (Knox County; *Chandler, J.*) held that Paladac's pending subdivision application did not prevent it from placing a manufactured housing unit on its property; that the Zoning Board of Appeals acted arbitrarily in not directing the Code Enforcement Officer to determine whether Paladac had showed compliance with the Manufactured Housing Law; and that the 300 foot setback requirement was contrary to Maine statutes. It remanded

the permit denial to the Zoning Board of Appeals with instructions to remand to the Code Enforcement Officer to consider whether Paladac had shown compliance with the Manufactured Housing Law. In Rockland's action, Paladac conceded liability on two of the counts seeking fines and the Court imposed a fine of $500 for each offense, then suspended all but $500. The Court awarded Rockland attorney fees and costs in the amount of $5,089.15 pursuant to 30 M.R.S.A. § 4966(3)(D) (Pamph.1988). Both Paladac and Rockland have appealed. With a minor modification, we affirm.

### Effect of the Subdivision Application

The Rockland subdivision ordinance provides that no one shall "develop" or "build upon" "any land in a subdivision which has not been finally approved and signed by the Planning Commission, certified by the City Clerk and recorded in the Knox County Registry of Deeds." Section 16–106. It also provides that no building shall be "erected or other improvements made to any lot in the subdivision for which a Final Plan has not been approved." *Id.* Rockland argues that, as a result of this provision, once a property owner files an application for subdivision approval it is precluded from any development of its land until approval is granted or denied or the application withdrawn.

The ordinance's limitations on development and building, however, apply only to land or a lot "in a subdivision." Paladac's land has not yet been subdivided. Paladac's action in placing one manufactured housing unit on its property did not create a subdivision. Under statutory definitions, incorporated by reference in Rockland Zoning Ordinance § 16–103, three or more lots must be created before a subdivision results. 30 M.R.S.A. § 4956(1) (Pamph.1988). Paladac's action may certainly damage its application for subdivision approval and may well require amendment of its application, but since the property is not yet a subdivision the ordinance does not prevent uses otherwise permissible under the law. Until Paladac actually creates a subdivision, the fact that it has

filed an application for approval does not halt its freedom to pursue other legal uses of the land as well.

### Compliance with the Manufactured Housing Act

Section 19–305 of the Rockland Ordinances deals with the regulation of manufactured housing and mobile home parks. Subsection 5 provides:

> No person, firm, corporation or other legal entity shall locate a manufactured home in the City of Rockland, or move a manufactured home from one lot or parcel of land to another, without a permit from the Code Enforcement Officer. The Code Enforcement Officer shall issue the permit within seven (7) days of receipt of a written application and submission of proof that the manufactured home meets the requirements of section 4, A.

Section 4, A deals with federal standards for so-called newer mobile homes and state standards for so-called modular homes, both of which apply to Paladac's unit. Paladac's initial application for a permit included no proof of compliance with section 4, A, and Paladac admits that it placed the unit on the site without a permit. Paladac did, however, subsequently refer the Code Enforcement Officer to compliance evidence affixed to the unit's kitchen sink (located there because of federal law requiring that all manufactured housing have proof of compliance attached to it) and also provided a letter from the manufacturer. The Code Enforcement Officer refused to consider both these pieces of information because he had already denied the permit and because the parties' were engaged in litigation. The Zoning Board of Appeals declined to overrule him.

■ Although the manufactured housing unit was clearly placed on the site illegally (as Paladac's concession reflects), we agree with the Superior Court that it was unreasonable for the Rockland authorities to ignore the evidence of compliance that Paladac eventually submitted. Rockland argues that its Zoning Board of Appeals has only the authority to "reverse, or affirm, wholly or in part or ... modify the order" of the Code Enforcement Officer, citing section 19–310(2) of its zoning ordinance. That provision also gives the Board "all the powers of the [Code Enforcement Officer]." Section 19–310(2).[2] We are content that this language provides the Board adequate authority to send the matter back to the Code Enforcement Officer to consider new evidence or to decide the matter itself. The Superior Court properly remanded the case to the Zoning Board of Appeals. It should not, however, have directed a further remand to the Code Enforcement officer; that decision is up to the Board.

### Rockland's Setback Requirement for Manufactured Housing

■ Maine's statute regulating the placement of manufactured housing provides:

> Municipalities shall permit manufactured housing, as defined in this section, to be placed or erected on individual house lots in a number of locations on undeveloped lots where single-family dwellings are allowed, subject to the same requirements as single-family dwellings....

30 M.R.S.A. § 4965(2) (Pamph.1988). The Rockland ordinance provides in section 19–305, subsection 9 ("Location of Manufactured Housing"), that "Modular Homes are permitted in all zones in which one family dwellings are permitted." That language certainly complies with the first portion of the state statute requiring that manufactured housing be permitted in a "number of locations" where single-family dwellings are allowed. 30 M.R.S.A. § 4965(2) (Pamph.1988). Under subsection 8 ("Manufactured Housing Standards"), however, the Rockland ordinance states that "[a]ll

---

**2.** This entire section actually deals with appeals from the Building Inspector rather than the Code Enforcement Officer. Both Rockland and Paladac, however, have consistently treated the appeal provision as governing the Code Enforcement Officer's denial of a permit and we therefore do the same. (We have discovered no other appeals procedure in the ordinance, and here the same individual is both Building Inspector and Code Enforcement Officer.)

manufactured housing shall be located at least three hundred (300) feet from any dwelling which exceeds one and one-half (1½) stories in height." Section 19–305(8). There is no similar requirement for the location of sitebuilt housing. This distinction appears to violate the last phrase of the state statute requiring that manufactured housing, where it is permitted, be "subject to the same requirements as single-family dwellings...." 30 M.R.S.A. § 4965(2) (Pamph.1988). Rockland argues that since there are a number of locations in Rockland without one and one-half story buildings, manufactured housing can be located in those locations in the same fashion as sitebuilt housing. Thus, Rockland maintains that the 300 foot requirement operates simply to exclude certain areas of town from manufactured housing. Since the statute requires only that manufactured housing be permitted "in a number of locations," not in all locations, Rockland maintains that it is in compliance with the state statute.

We reject this argument. The state statutory command to municipalities is simple: identify a number of locations where manufactured housing will be permitted subject to the same requirements as sitebuilt single-family homes. Rockland has simply not done so and we see no reason to impose a forced construction on its ordinance to save it. Under Rockland's interpretation, no one can point to any location on a map and say with certainty: "manufactured housing is permitted there," for on any given day the erection of a two-story sitebuilt house might be commenced next door. Indeed, someone who purchased a lot intending to place a manufactured housing unit on it would be subject to the day-to-day risk that a neighbor might commence construction of a two-story sitebuilt home first. Only manufactured housing, not sitebuilt housing, is subject to this risk and limitation. We believe that the Legislature intended municipalities to distinguish specific geographic areas that were either appropriate or inappropriate for manufactured housing. Historic districts or a village area composed of older period homes, for example, are singled out in the legislative history. See L.D. 1441, Statement of Fact (111th Legis.1983). Although the statute permits municipalities to establish specific design criteria for manufactured housing (items like roof, foundation and exterior siding, see 30 M.R.S.A. § 4965(2) (Pamph.1988)), a setback requirement is not commonly considered a design criterion.[3] The Superior Court, therefore, was entirely correct in finding this portion of the Rockland ordinance inconsistent with the state statute.

*Attorney Fees*

■ We find no abuse of discretion in the Superior Court's refusal to permit discovery on the issue of attorney fees. The trial courts are not required to permit disputes over attorney fees to expand into full-blown litigation. The record does not reflect any request by Paladac for a factual hearing on the fee issue. Instead, Paladac sought oral argument and then only "if necessary." (A later unconditional request was docketed after the Superior Court's decision.) In this posture of the case we find no abuse of discretion in the Superior Court's determination without a hearing that the fees requested were reasonable. *See Webber Oil Company v. Murray*, 551 A.2d 1371, 1376–77 (Me.1988). We decline, however, to award further fees on appeal. The major part of this appeal involved the substantive matters, all of which were appealed by the City of Rockland. It is not clear that Paladac would have appealed the attorney fees award in the absence of the City's substantive appeal. In light of the difficulty in segregating the matters and the generous amount of fees that has already been generated and awarded, we conclude that special circumstances make the award of further fees and costs unjust

---

**3.** Indeed, a unique setback requirement for manufactured housing is one of the characteristics that concerned the Review Committee on Manufactured Housing established by the 109th Legislature "to study current practices, including exclusionary ordinances, relating to siting of manufactured housing...." Report of the Review Committee on Manufactured Housing i, 7–8 (December 1980).

within the meaning of 30 M.R.S.A. § 4966 (Pamph.1988).

The entry is:

The Superior Court's judgment is modified to eliminate the direction that the Zoning Board of Appeals remand the issuance of the permit to the Rockland Code Enforcement Officer, and, as so modified, is affirmed.

All concurring.